## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. |
| v. | ) ) | _____ |
| JAMES CARTER, BRIDGET HERRING, and UNITED BANK, | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, OWNERS INSURANCE COMPANY ("Owners"), Plaintiff in the above-styled action, and files this Complaint for Declaratory Judgment, showing this honorable Court as follows:

## PARTIES AND JURISDICTION

1.

This is an action for declaratory judgment brought pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding the questions of actual controversy which presently exist among Owners and Defendant James Carter, Defendant Bridget Herring, and Defendant United Bank (collectively, the "Defendants").

2.

Defendant James Carter ("Defendant Carter") and Defendant Bridget Herring ("Defendant Herring") are individuals and citizens of Pike County, Georgia, who may be personally served at 984 Twin Oaks Road, Williamson, Georgia, 30292-3412.

3.

Defendant United Bank is a bank organized under the laws of the State of Georgia and having its principal place of business at 420 Griffin Street, P.O. Box 1337, Zebulon, Georgia 30295-1337. United Bank can be served through its registered agent, Christopher C. Edwards, 420 Griffin Street, P.O. Box 1337, Zebulon, Georgia 30295-1337.

4.

Owners is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Michigan. Owners submits itself to the jurisdiction and venue of this Court.

5.

This Court has original jurisdiction over this action under the provisions of U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs, and is among citizens of different states.

6.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Policy Application

7.

On or about July 7, 2021, Defendant Carter completed, signed, and submitted an application to Owners seeking insurance coverage for a 2021 ASV RT120F 2368 Loader ASVRT120KMDF02368 (the "Loader") and a "2021 Loftness 71" Battle Axe ("Battle Axe") (collectively with the Loader, the "Items") through his insurance agent, Chris Pellerin, of JP Capital & Insurance Inc. A true and correct copy of said application is attached hereto as **Exhibit 1** (the "Application").

8.

Upon information and belief, Agent Pellerin read the questions on the Application to Defendant Carter over the telephone, Defendant Carter gave responses to the questions, and Agent Pellerin completed the Application based on Defendant Carter's responses.

9.

Upon information and belief, after Defendant Carter and Agent Pellerin completed the Application over the phone, Agent Pellerin emailed the Application to Defendant Carter for review, and Defendant Carter e-signed the Application on July 7, 2021. (*See*, Exhibit 1).

10.

Upon information and belief, after Defendant Carter e-signed the Application on July 7, 2021, Agent Pellerin submitted the signed Application to Owners.

11.

In considering whether to accept the risk of providing insurance coverage for the Items, Owners reviewed and relied upon the information Defendant Carter provided in the Application and during the Application process.

12.

In the Application, Defendant Carter stated "no" in response to the question, "Are any items used commercially?" (*See*, Exhibit 1).

13.

Under the "Coverages" section of the Application, Defendant Carter sought $135,000 for "Grounds Care Vehicles" and listed the Loader and Battle Axe under "Schedule of Property." (*See*, Exhibit 1).

14.

In the Application, Defendant Carter stated "no" next to the question "Does the applicant own the property listed in the COVERAGES section?" (*See*, Exhibit 1). In the "Explanation" section, Defendant Carter stated, "WIFE OWNS PROPERTY." (*See*, Exhibit 1).

15.

The Application also asked for Defendant Carter's employer and occupation. However, Defendant Carter did not provide his employer or occupation. (*See*, Exhibit 1)

16.

Directly above the line for Defendant Carter's signature in the Application was the following statement: "I declare the facts stated on this application to be true and request the Company to issue this insurance and any renewals thereof in reliance thereon." (*See*, Exhibit 1).

17.

As part of its review of the Application, Owners asked Defendant Carter's insurance agent to confirm that the sole use of the Loader was to maintain his residence premises. On or about July 20, 2021, Defendant Carter, through his

insurance agent, represented to Owners that the Loader stayed at his residence and was not used for commercial/business purposes.

18.

Whether the Loader and/or the Battle Axe was used for commercial and/or business purposes was material to Owners' decision to accept the risk of providing insurance for the Items, the type of policy form Owners issued for the Items, and/or the premium charged.

**The Policy**

19.

Without waiving defenses related to application misrepresentations or material inaccuracies, Owners shows that, based on Defendant Carter's representations in the application process, Owners issued personal articles policy no. 53-533-981-00 to Defendant James Carter, in his individual capacity, on July 14, 2022 for the term July 7, 2021 to July 7, 2022 for the Loader and Battle Axe. True and correct copies of the Declaration Page and the Policy are collectively attached hereto as **Exhibit 2** (the "Policy").

20.

The Policy, subject to its terms and conditions, provided certain property protection coverage for the Loader, up to a limit of $100,000, and for the Battle Axe, up to a limit of $35,000, subject to a $1,000 deductible. (*See* Exhibit 2).

21.

The Policy identified United Bank as the secured interested party for the Items. (*See* Exhibit 2).

22.

The Policy states as follows:

### INSURING AGREEMENT

**We** agree to provide insurance subject to all the terms of this policy. In return, **you** must pay the premium and comply with all the policy terms.

This policy applies to loss which occurs during the policy term shown in the Declarations. The coverages provided, the limits and the premiums are also shown in the Declarations. The descriptions in the headings of this policy and all applicable endorsements are solely for convenience and are not part of the terms and conditions of coverage.

### DEFINITIONS

**We** define certain words and phrases used throughout this policy. These defined words and phrases apply to the singular, plural, possessive and any other form of the word or phrase. Defined words and phrases appear in **bold font** whenever used in this policy and endorsements attached to this policy.

. . .

**2. You** or **your** means any named insured shown in the Declarations and if an individual, such individual named insured's spouse who resides in the same household.

23.

Additionally, the Policy states under PROPERTY PROTECTION, in relevant

part:

**PROPERTY PROTECTION**

**1. COVERAGE**

**We** cover:

**a.** personal property for which a limit of insurance is shown in the Declarations or Schedule[.]

. . .

**2. PERILS INSURED AGAINST**

**We** insure against direct physical loss except for losses excluded in this policy.

24.

Under WHAT TO DO IN CASE OF LOSS, the Policy states:

If a covered loss occurs, **you** agree to:

**1.** Give **us** or **our** agency immediate written notice. In case of theft also notify the police and provide them with a complete inventory of stolen or damaged property.

**2.** Protect the property from further loss, making necessary and reasonable repairs to do so and keeping records of the cost.

**3.** Make an inventory of all lost or damaged property; show in detail quantities, costs, **actual cash value** and amount of loss claimed; attach to the inventory all available bills, receipts and related documents that substantiate the figures in the inventory.

**4.** Send to **us**, within 90 days after loss, a proof of loss signed and sworn to by **you**, including:

**a.** the time and cause of loss;

**b. actual cash value** and amount of loss to the property;

**c.** all encumbrances on the property;

**d.** other policies covering the loss; and

**e.** the inventory of all lost or damaged property required by **3.** above.

**5.** Exhibit the damaged property to **us** or **our** representative as often as may be reasonably required.

**6.** Submit to examinations under oath and sign the transcript of the statements and examinations.

**7.** Produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as **we** may reasonably require.

25.

Under GENERAL CONDITIONS, the Policy states, in relevant part:

**2. CONCEALMENT OR FRAUD**

**We** shall not pay for any claim for any person if, whether before, during or after the claim, that person to which this policy applies has:

   **a.** intentionally concealed or misrepresented any fact or circumstance;

   **b.** engaged in fraudulent conduct; or

   **c.** made false statements material to the claim and relating to this insurance.

. . .

**4. OUR PAYMENT OF LOSS**

**We** will adjust any loss with **you** and pay within 60 days after **we** receive **your** proof of loss and the amount of loss is finally determined by an agreement between **you** and **us**, a court judgment or an appraisal award.

## **The Loss**

26.

On or about November 2, 2021, Defendant Carter submitted a claim to Owners seeking coverage under the Policy for property damage to the Items resulting from a fire loss that reportedly occurred on the same day. (the "Loss"). Owners assigned the claim no. 300-0605592-2021 (the "Claim").

27.

Owners undertook an investigation of the Claim and Loss and, pursuant to the terms and conditions of the Policy, requested that he complete a sworn proof of loss in accordance with the terms of the Policy.

28.

In the course of its investigation of the Claim, Owners learned for the first time that Defendant Carter had a business called Carter's Clearing and Grading. Owners also learned that Defendant Carter was using the Items for Carter's Clearing and Grading at the time he submitted the Application to Owners as well as on or around July 20, 2021, the date Defendant Carter, through his insurance agent, represented to Owners that the Items stayed at his residence and were not used for commercial/business purposes in response to a question Owners posed during its review of Defendant Carter's Application.

29.

On or about December 17, 2021, Owners sent a reservation of rights letter to Defendant Carter, notifying him that Owners was conducting an investigation of the Loss and Claim subject to its reservation of rights.  A true and correct copy of the December 17, 2021 reservation of rights letter is attached hereto as **Exhibit 3**.

30.

Pursuant to the Policy conditions and subject to the reservation of rights, on December 29, 2022, Owners requested the examination under oath of Defendant Carter and scheduled it to occur on January 11, 2022. Owners also requested that Defendant Carter produce documents related to his use of the Items, the formation of Carter's Clearing and Grading, his communications with JP Capital & Insurance the purchase of the Items, the procurement of the Policy, and a complete, sworn proof of loss. Owners requested these documents as they may contain material information that is relevant to Defendant Carter's procurement of the Policy as well as other coverage issues.

31.

Defendant Herring contacted Owners' counsel to confirm receipt of the December 29, 2021 letter and to state that Defendant Carter would appear for his examination under oath on January 11, 2022.

32.

On January 11, 2022, Defendant Carter appeared for his examination under oath without counsel and agreed to proceed without an attorney.

33.

Defendant Herring accompanied Defendant Carter to his examination under oath on January 11, 2022, but did not did not attend the examination.

34.

During his examination under oath, Defendant Carter testified that he and Defendant Herring have been married since October 2019 and that they have resided at 984 Twin Oaks Road, Williamson, Georgia, 30292-3412 since November 2019. Upon information and belief, Defendant Carter and Defendant Herring have been residents of the same household at all times relevant to this lawsuit.

35.

Under the Policy definition, "you" or "your" refers to both Defendant Carter and Defendant Herring.

36.

At his January 11, 2022 examination under oath, Defendant Carter testified that he was the sole owner of the Items and that his wife, Defendant Herring, did not have an ownership interest in the Items.

37.

At his January 11, 2022 examination under oath, Defendant Carter testified that he is self-employed and runs a business called Carter's Clearing and Grading ("Carter's Business"), which was formed in March 2021. Carter testified that he maintained a Facebook page for Carter's Business.

38.

The only document Defendant Carter brought to his January 11, 2022 examination under oath was an occupational tax certificate issued by Pike County to Defendant Carter, authorizing him to conduct a clearing and grading business. The occupational tax certificate identified Carter's Clearing and Grading as the business name and 984 Twin Oaks Road, Williamson, Georgia, Defendant Carter's residential address, as the location of the business.

39.

At his January 11, 2022 examination under oath, Defendant Carter testified that he did not apply for a separate insurance policy for Carter's Business.

40.

At his January 11, 2022 examination under oath, Defendant Carter testified and affirmed that he does not use the Loader to perform work for Carter's Business and has never used the Loader for Carter's Business.

41.

At his January 11, 2022 examination under oath, Defendant Carter testified that instead of the subject Loader, he used a loader that belonged to a friend to perform work for Carter's Business.

42.

Defendant Carter asked to suspend the examination under oath so he could retain counsel to represent him in connection with this Claim. Counsel for Owners agreed to suspend the examination under oath.

43.

Before suspending the January 11, 2022 examination under oath, Owners requested that Defendant Carter have his attorney send Owners' counsel a letter of representation so Owners could re-schedule a date and time to complete his examination under oath and have his attorney send the documents requested by Owners as well. Owners reiterated its request in a follow-up letter to Defendant Carter dated January 11, 2022.

44.

Owners did not receive any communication from Defendant Carter or any attorney purporting to represent him. Thus, in a letter dated February 11, 2022, Owners scheduled the continuation of Defendant Carter's examination under oath to

occur on February 24, 2022. Owners also requested the examination under oath of Defendant Herring to occur on February 24, 2022 after Defendant Carter's examination under oath was complete. Owners reiterated its requests that Defendant Carter produce certain documents that were relevant to Owners' investigation. Owners also directed the document requests at Defendant Herring.

45.

On the morning of February 24, 2022, Defendant Carter called Owners' counsel and stated that neither he nor Defendant Herring would attend their examinations under oath which were scheduled to occur that day.

46.

Owners received no communication from Defendant Carter or Defendant Herring from February 24, 2022 to mid-May 2022.

47.

In mid-May 2022, counsel for Defendant Carter and Defendant Herring notified Owners' counsel that he had been hired to represent Defendant Carter and Defendant Herring in connection with the Claim. He stated that Defendant Carter and Defendant Herring wished to pursue the Claim and comply with Owners' investigation.

48.

In a letter dated May 18, 2022, in response to Defendant Carter and Defendant Herring's request to pursue the Claim and comply with Owners' investigation, Owners reiterated its requests for documents related to the Claim and the examinations under oath of Defendant Carter and Defendant Herring.

49.

The continuation of Defendant Carter's examination under oath and Defendant Herring's examination under oath were scheduled to occur on July 20, 2022, per agreement of counsel.

50.

Before July 20, 2022, Defendant Carter produced a copy of his marriage certificate, a policy issued by Next Insurance to "James Carter" and "Carter's Clearing and Grading," Defendant Carter's individual tax returns for 2020 and 2021, United Bank monthly statements for September to December 2021, a business loan agreement, promissory note, and other loan-related documents from United Bank, as well as a signed and notarized proof of loss dated May 25, 2022.

51.

At his July 20, 2022 examination under oath, Defendant Carter testified that he purchased the Items for Carter's Business. He entered into a business loan

agreement with United Bank to obtain funding to purchase the Items for Carter's Business.

52.

At his July 20, 2022 examination under oath, Defendant Carter testified that he used the Items for Carter's Business at the time he completed the Application for the Policy, after the Policy was issued, and at the time of Loss.

53.

At his July 20, 2022 examination under oath, Defendant Carter testified that he had applied for and obtained a general liability policy for Carter's Business from Next Insurance before he submitted the Application for the Policy to Owners.

54.

At his July 20, 2022 examination under oath, Defendant Carter testified that he did not disclose the existence of Carter's Business or the fact that he used the Loader and/or Battle Axe for Carter's Business to his insurance agent during the Application process for the Policy.

55.

At his July 20, 2022 examination under oath, Defendant Carter testified that he did not delete any emails, including emails he received around the time he

purchase the Items, obtained the general liability policy for Carter's Business, and completed the Application for the Policy.

56.

At their July 20, 2022 examinations under oath, Defendant Herring and Defendant Carter testified that Defendant Herring had no knowledge of or involvement in purchasing the Items, applying for insurance for the Items, applying for insurance for Carter's Business, or the Claim.

57.

According to Defendant Herring, on January 11, 2022, Defendant Carter informed her that he was asked if he used the Loader to perform work for Carter's Business and that he testified "no" when the answer was in fact, "yes."

58.

At her July 20, 2022 examination under oath, Defendant Herring testified that she had no knowledge of the fact that Owners had requested and scheduled her examination under oath on February 24, 2022.

59.

Owners first requested that Defendant Carter submit a sworn proof of loss on November 2, 2021. Defendant Carter submitted a proof of loss dated November 24, 2021. Owners notified Defendant Carter that it rejected the November 24, 2021

proof of loss in a letter dated December 13, 2021 as it incorrectly identified "JP Capital and Insurance Inc." as the insured on the Policy and did not provide the replacement cost of the damage, the actual cash value of damage, or the amount claimed under the Policy for the Loss, as required by the conditions under WHAT TO DO IN CASE OF LOSS in the Policy. The phrase "personal use" was handwritten in the "occupancy" line of the November 24, 2021 proof of loss.

60.

Defendant Carter submitted another proof of loss dated May 25, 2022. This proof of loss incorrectly identified "JP Capital and Insurance Inc." as the insured on the Policy. The proof of loss set forth the same amount for the purported replacement cost and actual cash value of the Items. However, Defendant Carter did not provide any information or documents regarding how this amount was calculated. In contrast to the November 24, 2021 proof of loss, "N/A" was handwritten in the "occupancy" line of the May 25, 2022 proof of loss. For these reasons, Owners notified Defendant Carter that it rejected the May 25, 2022 proof of loss and reiterated its request that he submit a sworn proof of loss that complied with the Policy conditions in letters dated July 25, 2022 and August 2, 2022.

61.

In the letters dated July 25, 2022 and August 2, 2022, Owners also reiterated its requests for copies of communications with JP Capital & Insurance, Next Insurance, and United Bank, documents that substantiate the amounts claimed in the proof of loss, if any, among other items, as these documents may contain material information about Defendant Carter's procurement of the Policy. Owners also requested that Defendant Carter and Defendant Herring sign, notarize, and return the signature pages of their examinations under oath transcripts to Owners, as required by the Policy.

62.

On September 7, 2022, Defendant Carter submitted a signed and notarized signature page and errata sheet for his January 11, 2022 examination under oath transcript that revised his testimony about whether he used the Loader for Carter's Business, among other changes. Defendant Herring also submitted a signed and notarized signature page and errata sheet for her July 20, 2022 examination under oath transcript. Defendant Herring's errata sheet revised her testimony about what Defendant Carter shared with her about his January 11, 2022 examination under oath testimony related to whether he used the Loader for Carter's Business. On September 12, 2022, Defendant Carter submitted a signed and notarized signature

page and errata sheet for his July 20, 2022 examination under oath transcript that contained no changes to his testimony.

63.

While Defendant Carter and Defendant Herring submitted signed and notarized signature pages to their transcripts, they did not submit any of the other documents requested in the letters dated July 25, 2022 and August 2, 2022.

## **FIRST CLAIM FOR RELIEF**

## **Application Misrepresentation under O.C.G.A. § 33-24-7**

64.

Owners reiterates paragraphs 1 through 63 as if fully set forth herein.

65.

In his Application for insurance coverage for the Items, Defendant Carter represented that the Loader was not used commercially or for business. (*See*, Exhibit 1).

66.

In his Application for insurance coverage for the Items, Defendant Carter represented that the Battle Axe was not used commercially or for business. (*See*, Exhibit 1).

67.

Defendant Carter signed the Application on or about July 7, 2021 and submitted it to Owners, through his insurance agent, to obtain insurance coverage for the Items.

68.

While reviewing the Application but prior to accepting coverage, Owners asked Defendant Carter, through his insurance agent, to confirm that the Items were not used for business or commercial purposes. On or about July 20, 2021, Defendant Carter, through his insurance agent, represented to Owners that the Items stayed at his residence and were not used for commercial/business purposes.

69.

At the time Owners agreed to issue the Policy, Owners had no knowledge or notice of the fact that Defendant Carter used the Loader and/or the Battle Axe for business/commercial purposes.

70.

Defendant Carter's representation that the Items were not used for business or commercial purposes in the Application and during Owners' review of the Application constituted material misrepresentations, inaccuracies, and/or omissions. *See* O.C.G.A. § 33-24-7.

71.

Defendant Carter's misrepresentations, omissions, concealed facts, and/or false statements regarding the business/commercial use of the Items were material to Owners' acceptance of the risks and hazards of providing insurance coverage for the Items. *See* O.C.G.A. § 33-24-7.

72.

Had Owners known the truth about the Loader and Battle Axe's business/commercial use, Owners would not have issued the subject personal articles policy. Alternatively, Owners would not have issued the Policy for the type and/or amount of coverage it provides or at the premium rate that was charged if the true facts regarding the Loader and Battle Axe's business/commercial use had been known to Owners. *See* O.C.G.A. § 33-24-7.

73.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

74.

Accordingly, pursuant to O.C.G.A. § 33-24-7, Owners seeks a declaration from this Court that the Policy is void *ab initio* due to Defendant Carter's misrepresentations, omissions, concealment of facts, and/or false statements about the Items' business/commercial use in the Application and during Owners' review of the Application and that rescission of the Policy is proper.

75.

If the Court declares that the Policy is void *ab initio*, Owners agrees to tender and return any and all premiums paid for the Policy to Defendant Carter.

## SECOND CLAIM FOR RELIEF

## Concealment or Fraud provision in the Policy

76.

Owners reiterates paragraphs 1 through 75 as if fully set forth herein.

77.

To the extent the Court declares the Policy is void *ab initio* due to Defendant Carter's misrepresentations, omissions, concealment of facts, and/or false statements about the Items' business/commercial use in the Application and during Owners' review of the Application, Owners has no obligation to provide coverage for the Loss.

78.

If the Court does not declare the Policy void *ab initio*, pursuant to the Concealment or Fraud provision under GENERAL CONDITIONS of the Policy, there is no coverage for a loss or claim if the person seeking coverage intentionally conceals or misrepresents "any fact or circumstance[,]" engages in "fraudulent conduct[,]" or makes "false statements material to the claim and relating to this insurance."

79.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners about the Items' commercial/business use and the existence of Carter's Business in the Application as well as during Owners' review of the Application.

80.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners about the Items' commercial/business use during the presentation of the Claim.

81.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners about what equipment he used for Carter's Business during the presentation of the Claim.

82.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements in the Application he submitted to Owners about the ownership of the Items.

83.

Upon information and belief, Defendant Carter and Defendant Herring intentionally concealed, misrepresented, and/or made material false statements regarding Defendant Herring's knowledge and/or involvement in obtaining the Policy and/or the presentation of the Claim.

84.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements in the Application he submitted to Owners about the fact that he had two losses in the preceding three years.

85.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners during the presentation of the Claim regarding whether he applied for an insurance policy for Carter's Business as well as the existence of an insurance policy for Carter's Business.

86.

Upon information and belief, Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners during the presentation of the Claim about the fact that he purchased the Items for Carter's Business.

87.

To the extent the Court does not declare the Policy is void *ab initio*, there is a question of whether Defendant Carter made material false statements and/or intentionally concealed or misrepresented facts and circumstances about the Items' commercial/business use, Defendant Carter's prior losses, and/or the existence of Carter's Business in the Application and during Owners' review of the Application in order to induce Owners into issuing the Policy, in violation of the Concealment or Fraud provision of the Policy.

88.

To the extent the Court does not declare the Policy is void *ab initio*, there is a question of whether Defendant Carter and/or Defendant Herring made material false statements and/or intentionally concealed or misrepresented facts and circumstances about Defendant Herring's knowledge and/or involvement in the Claim, the Items' commercial/business use, the existence of Carter's Business, applying for and obtaining an insurance policy for Carter's Business, and/or Defendant Carter's reason for purchasing the Items during the presentation of the Claim in order to induce Owners into providing coverage for the Loss, in violation of the Concealment or Fraud provision of the Policy and Owners is not obligated to provide coverage for the Claim.

89.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

90.

Accordingly, to the extent the Court does not declare the Policy is void *ab initio* and determines that Defendant Carter intentionally concealed, misrepresented,

and/or made material false statements to Owners in order to procure the Policy, Owners seeks a declaration from this Court that Defendant Carter violated the Concealment or Fraud provision and no coverage is afforded for the Loss under the Policy.

91.

In addition to the declaration above, or in the alternative, if the Court determines that Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners about the Loader's business/commercial use during his examination under oath in order to procure coverage for the Loss, Owners seeks a declaration from this Court that Defendant Carter violated the Concealment or Fraud provision and no coverage is afforded for the Loss under the Policy.

92.

To the extent the Court does not declare the Policy is void *ab initio* and determines that Defendant Carter intentionally concealed, misrepresented, and/or made material false statements to Owners during the presentation of the Claim in order to induce Owners into providing coverage for the Loss, Owners seeks a declaration from this Court that Defendant Carter violated the Concealment or Fraud provision and no coverage is afforded for the Loss under the Policy.

93.

To the extent the Court does not declare the Policy is void *ab initio* and determines that Defendant Herring intentionally concealed, misrepresented, and/or made material false statements to Owners during the presentation of the Claim in order to induce Owners into providing coverage for the Loss, Owners seeks a declaration from this Court that Defendant Herring violated the Concealment or Fraud provision and no coverage is afforded for the Loss under the Policy.

## THIRD CLAIM FOR RELIEF

### What To Do in Case of Loss Conditions in the Policy

94.

Owners reiterates paragraphs 1 through 93 as if fully set forth herein.

95.

To the extent the Court does not declare the Policy void *ab initio*, under the Policy definition, the terms "you" or "your" in the Policy refer to both Defendant Carter and Defendant Herring, as the named insured on the Declarations page and named insured's spouse, respectively.

96.

To the extent the Court does not declare the Policy is void *ab initio*, Defendant Carter and Defendant Herring are required to submit a signed and sworn proof of

loss that provides the actual cash value and amount of loss, as well as other material information required pursuant to the WHAT TO DO IN CASE OF LOSS conditions in the Policy.

97.

Under the WHAT TO DO IN CASE OF LOSS conditions in the Policy, Defendant Carter and Defendant Herring are required to submit a "proof of loss signed and sworn to by you" that includes the time and cause of loss, the actual cash value and amount of loss to the Items, all encumbrances on the Items, all other policies covering the loss, and other information. Further, under the WHAT TO DO IN CASE OF LOSS conditions in the Policy, Defendant Carter and Defendant Herring are required to produce "all books of account, bills, invoices, receipts" and other documents Owners reasonably may require.

98.

To the extent the Court does not declare the Policy is void *ab initio*, a question exists as to whether Defendant Carter and Defendant Herring breached their obligations by failing to submit a properly completed proof of loss and/or produce documents requested by Owners, as required under WHAT TO DO IN CASE OF LOSS in the Policy.

99.

To the extent that Defendant Carter and Defendant Herring breached their obligations under the WHAT TO DO IN CASE OF LOSS provision in the Policy, there is no coverage for the Loss or Claim.

100.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

101.

Accordingly, if the Court does not declare the Policy void *ab initio* and determines that Defendant Carter and Defendant Herring breached their obligations under the WHAT TO DO IN CASE OF LOSS provision in the Policy, Owners seeks a declaration from this Court that no coverage is afforded for the Loss under the Policy.

## **FOURTH CLAIM FOR RELIEF**

### **United Bank**

102.

Owners reiterates paragraphs 1 through 101 as if fully set forth herein.

103.

The Policy identified United Bank as the secured interested party for the Items.

104.

To the extent the Court declares the Policy void *ab initio* or in the alternative, finds there is no coverage for the Loss under the Policy, it is unclear whether United Bank has a right to recover under the Policy as the secured party identified on the Policy.

105.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

106.

Accordingly, if the Court declares the Policy void *ab initio* or in the alternative, determines there is no coverage for the Loss under the Policy, Owners seeks a declaration from this Court that United Bank does not have an independent right to recover for the Items under the Policy.

**WHEREFORE,** Owners prays:

a.  That this Court enter a Declaratory Judgment, declaring the Policy is void *ab initio*, that rescission of the Policy is proper, and that Owners is not liable to the Defendants;

b.  In the alternative, if the Court does not declare the Policy void *ab initio,* that this Court enter a Declaratory Judgment, declaring there is no coverage for the Loss under the Concealment or Fraud provision of the Policy, that Owners is not liable to Defendant Carter and Defendant Herring, and that United Bank does not have an independent right to recover for the Loss under the Policy;

c.  In the alternative, if the Court does not declare the Policy void *ab initio,* that this Court enter a Declaratory Judgment, declaring there is no coverage for the Loss based upon Defendant Carter and Defendant Herring's breach of the conditions under the WHAT TO DO IN CASE OF LOSS conditions of the Policy, that Owners is not liable to Defendant Carter and Defendant Herring, and that United Bank does not have an independent right to recover for the Loss under the Policy;

d.  That process and summons be issued to all Defendants herein and that service on the Defendants be had as required by law;

e.  That Owners be awarded its costs in this action; and

f.  That this Court award such other and further relief as this honorable Court

may deem proper under the circumstances.

Respectfully submitted this 14th day of September, 2022.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Christine H. L. Russell*
Mark T. Dietrichs
Georgia Bar No. 221722
Christine H. L. Russell
Georgia Bar No. 353618
*Attorneys for Owners Insurance*
*Company*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, GA  30309
OFF:  (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Christine.Russell@swiftcurrie.com